STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


JAMES KIRT CAMPBELL
(ADC#510207)                                                                                          PLAINTIFF

      v.                                        Civil No. 6:13-cv-6137

NATHAN GREELEY, DAVID
DAVID NORWOOD, AND JAILER
DOUG WOOD                                                                                       DEFENDANTS


**REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

      This is a civil rights action filed by Plaintiff, James Kirt Campbell, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

      Currently before the Court is Defendants' Motion for Summary Judgment (ECF No. 32.); Brief in Support of Their Motion for Summary Judgment (ECF No. 33); and Statement of Facts (ECF No. 34.).  Plaintiff filed a Response to Motion For Summary Judgment utilizing a questionnaire from the Court.  ECF No. 39.   After careful consideration of the briefing, the undersigned makes the following Report and Recommendation.

**I.      BACKGROUND**

      The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Ouachita County Detention Center ("OCDC") in Camden, Arkansas. Plaintiff filed the instant

1

Complaint on November 19, 2013.  ECF Nos. 1, 39. Plaintiff alleges his constitutional rights were violated when Defendants were deliberately indifferent to his medical condition and when he was housed in unconstitutional conditions of confinement.  ECF No. 39, p. 2. Plaintiff initially brought this action against Defendants in only their official capacities.  ECF. No. 1, p. 4. However, in his Response he indicated he was also making individual capacity claims.  ECF No. 39, p. 25.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

### A.   Official Capacity Claims

Plaintiff appears to argue that Defendants violated his rights in their official capacities because they did not do their jobs in the same manner as the Clark County Detention Center staff. ECF No. 39, p. 8.  He argues that the OCDC security and living conditions need to be looked into because the staff is not doing their job.  ECF Nos. 39, p. 26; 40-1, p. 27. Finally, Plaintiff testified in his deposition that the Defendants were violating jail policies and procedures, but had no way of looking up the polices and procedures to identify them.  ECF Nos. 40-1, p. 51.

Defendants argues Plaintiff has made no allegations that could give rise to a claim of official capacity liability. ECF No. 33, pp. 3-4.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998).  "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's

constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997). A violation of jail standards does not equate with a violation of the Constitution. "Jail standards, although helpful and relevant in some cases, do not represent minimum constitutional standards." *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)

Plaintiff has not identified any policy, custom, or practice that violated his constitutional rights. He has not provided proof of any policy, custom, or practice which violated his constitutional rights. To the contrary, he states the allegedly harmful activities were a violation of unidentified jail policies by individuals who were not doing their jobs as Plaintiff thought they should. Nor has Plaintiff alleged any facts that might be construed as a policy, custom, or practice that violated his constitutional rights.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's official capacity claims against all Defendants.

## B.     Individual Capacity Claims

### 1.     Deliberate Indifference to Medical Needs

Plaintiff argues Defendants were deliberately indifferent to his medical needs when they delayed his access to medical treatment when he was coughing up blood. ECF No 39, p. 2.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Deliberate indifference may be manifested by "prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011)(citing *Roberson v. Bradshaw,* 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox,* 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation"). In evaluating a treatment delay for summary judgment purposes, the court "must accept facts as recited in prisoner affidavits as true..." *Wise v. Lappin,* 674 F.3d 939, 941 (8th Cir. 2012) (citing *Tlamka v. Serrell,* 244 F.3d 628, 634 (8th Cir. 2001.)(taking Plaintiff's statements as true, the record revealed trialworthy issues as to a treatment delay of two months for a broken jaw when prison medical providers had a diagnosis and recommendation for a specialist referral, Plaintiff repeatedly complained of pain and difficulty due to his injury, and the jaw deformity was physically obvious.)

In this case, Plaintiff alleges he told Defendant Wood and other OCDC officials he was coughing up blood. He was told to submit a medical request. ECF No. 39, p. 3. Plaintiff agreed that he submitted his first medical request for treatment on October 25, 2013. ECF No. 39, p. 4. Plaintiff was seen by a physician on November 12, 2013. Plaintiff agreed that he was diagnosed with

bronchitis and prescribed medication. ECF No. 39, p. 5. He took the medication and his condition improved. He did not require further treatment for his bronchitis. ECF No. 39, p. 6. When asked if the physician noted in his medical records or told him his bronchitis condition had worsened or caused any detrimental effect as a result of having to wait from October 25 to November 12 to receive treatment, Plaintiff checked "No." He then stated " I am not sure what he wrote in my medical records because they never gave me a copy of my release papers from the hospital, so I don't even know if it was bronchitis." ECF No.  39, p. 7.

Thus, Plaintiff has not provided verifying medical evidence to show the delay from the time he made a medical request on October 25th to when he saw the doctor on November 12th caused any detrimental effect. Nor may any such effect be inferred from the facts or allegations in the record.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's deliberate indifference to medical needs claims against all Defendants in their individual capacity.

### 2.      Failure to Protect

Plaintiff argues he was hurt when several inmates assaulted him after he accused them of stealing commissary items from his box. He states no security came to his assistance until after the beating was over and there were no regular security checks.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners.  *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victims's safety." *Farmer v. Brennan,*

6

511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis.*"*Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Whether an injury is sufficiently serious is "claim dependent." *Id.* at 447. "No clear line divides *de minimis* injuries from others." *Id.* In *Irving,* the inmate was assaulted by another inmate at the instigation of prison guards. He suffered injuries to his jaw and nose, which caused him difficulties in breathing for two months after the attack. *Id.* at 445. The Eighth Circuit held that these injuries were sufficiently serious to support a failure to protect claim. *Id.* at 448. *See also Walton v. Dawson*, 752 F.3d 1109, 1118 (8th Cir. 2014)( "It is . . . beyond dispute that rape or sexual assault at the hands of other prisoners is sufficiently serious to amount to a deprivation

7

of constitutional dimension.")(internal quotations omitted); *Ellis v. Bass*, 982 F.2d 525, *2 (8th Cir. 1992)(unpublished)(irritation to inmate's skin and eyes caused when another inmate threw a bucket of a bleach and cleanser solution over him was *de minimus* at most); *Chavero-Linares*, 2013 WL 5655559, *8 (N.D. Iowa 2013) (scratch or cut on cheek that Plaintiff received when another inmate threw a chair at her, which required only one pain pill for treatment, was *de minimis* injury).

Several Circuits have utilized the test enunciated in *Luong. v. Hatt*, 979 F. Supp. 481, 486 (N.D. Texas Sept. 11, 1997) to evaluate the seriousness of the injury.  In analyzing an Eighth Amendment failure to protect claim, the court first noted that *Siglar v. Hightower*, 112 F.3d 191 (5th Cir 1997) provided no definition of a physical injury or a *de minimis* injury pursuant to 1997e(e).  *Id.* at 486.  It then stated that a physical injury is:

> an observable or diagnosable medical condition requiring treatment by a medical professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. which lasts even up to two or three weeks.. . . Injuries treatable at home [by a free world citizen]  and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e). . .

*Id.*; *See also Perez v. United States*, 330 Fed. App'x. 388, 389 (3d Cir. 2009) and *Jarriett v. Wilson*, 162 Fed. App'x. 394, 401 (6th Cir. 2005) (using the *Luong* test).

The Ninth Circuit found the *Luong* test required "too much," but also held that "any injury" is "too little" as an injury requirement.  *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir 2002.) In this case, back and leg pain caused from overcrowded cell conditions, undescribed physical injuries from a fight in the cell, and a canker sore were not more than *de minimis*.  *Id.* at 629.

In this case, Plaintiff alleges when he went to see the physician on November 12th for his cough, other inmates went into his box and stole the commissary food he had stored in it. He was angry and confronted the other inmates. ECF No. 40-1, pp. 22-23. That night these inmates assaulted

8

him.  He testified no officers came to stop them.  Instead, he had to wait until they finished beating

him to go push the button to call the guards.  He did not indicate how long the altercation lasted. Five

minutes after he pushed the button a female guard came to the cell, looked inside, and then left. ECF

No. 40-1, p. 23.  She came back with "maybe three guards." ECF No. 40-1, p. 24. He stated that his

hip and arm were injured. ECF No. 39, p. 8. He was taken to the ER and given Naproxen for about

a week and a half after the altercation and an extra mat. ECF No. 39, pp. 8-9.  He could not recall

the names of his assailants. ECF No. 40-1, p. 22.  Plaintiff testified that he did not know that these

inmates were going to attack him. ECF No. 40-1, p. 24.  He reported to Defendant Wood and a

transport officer was that they had stolen from him. ECF No. 40-1, p. 24.  Plaintiff testified the

officers told him"they were just really going around jumping on people, trying to take they

commissary out of they box and stuff." ECF 40-1, p. 22. When asked if any of the inmates who

assaulted him had been disciplined or removed from the pod, he stated "Yes, I think so." ECF 40-1,

p. 24.

Plaintiff has not provided evidence that any of the Defendants knew of and disregarded an

excessive risk to his health or safety.  Plaintiff himself testified he did not know he was at risk of

being beaten by these inmates. Nor was there anything in the record to suggest any of the

Defendants were aware of facts placed the Plaintiff at risk of serious harm over and above the

inherent but constitutional danger of prison life. *See e.g. Falls v. Nesbitt*, 966 F.2d 375, 380 (8th

Cir. 1992)(when an inmate did not fear the inmate who attacked him and admitted that the attack

was without provocation or warning, no Eighth Amendment violation exists).  Without any

indication of how long the altercation lasted, it is not possible to determine if there was anything

about the alleged lack of response time which might support an Eighth Amendment claim.

9

Further, Plaintiff's unidentified and undocumented hip and arm injuries, which required only an over-the-counter NSAID and an extra mat for treatment,  are *de minimis* at most. Plaintiff did not allege any serious difficulty, such as the breathing problems suffered by the inmate in *Irving*. Plaintiff's undescribed physical injuries from a fight are precisely the type of injury that is explicitly considered *de minimis* in *Luong*.  They are also less than the aches and pains, minor physical injuries, and canker sore suffered by the inmate and considered *de minimis* in *Oliver*.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's failure to protect claims against all Defendants in their individual capacity.

### 3.    Access to Courts

Plaintiff alleges that he did not have access to a law library to research sentence reduction, fines, and filing a *habeas corpus* petition.  ECF No. 39, p. 13.

The Supreme Court has held  "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977).  Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance."  *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation.  *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of

these and other methods).   However, an inmate has no standing to pursue an access claim unless he can demonstrate  he suffered prejudice or actual injury as a result of the prison officials' conduct.  *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993).  "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

The prison must also provide inmates with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds v. Smith,* 430 U.S. at 824-5;  *see also Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir.1996)(*citing, Lewis v. Casey,* 518 U.S. at 350-1).  The duty to provide such allowances is constrained by the inmates' right of *meaningful* access to the courts. *Bounds v. Smith,* 430 U.S. at 824-5.

In this case, Plaintiff was represented by an attorney during the time covered by this action. In his deposition, Plaintiff stated he wrote his attorney and never received a response on a question about Rule 37.  ECF No. 40-1, p. 36.  In his Response Plaintiff stated he wrote his attorney once and received a response.  When asked if he was ever denied access to contact his attorney Plaintiff checked "No."  ECF No. 39, p. 13.  Plaintiff alleges his mail was tapered with or withheld two or three times, but does not allege the detention center ever held or tampered with mail from his

attorney.  ECF No. 39, p. 14.  Plaintiff alleges the tampering or holding of mail caused him to miss a deadline for his sentence reduction.  ECF No. 39, p. 15.

Plaintiff has not provided any evidence that he missed a deadline, or that any action of any Defendant caused him to miss a deadline.  Nor has he provided any evidence that he was denied meaningful access to the courts.  To the contrary, Plaintiff stated that he was never denied access to his attorney and the detention center never tampered with or held mail from his attorney.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's access to court claim against all Defendants in their individual capacity.

### 4.      Interference With Plaintiff's Mail

Plaintiff argues that his mail was tampered with or withheld two or three times.  ECF No. 39, p. 15.

Inmates have a First Amendment right of free speech to send and receive mail.  *Hudson v. Palmer*, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 125 (1977).  Restrictions on this First Amendment right are valid "only if reasonably related to legitimate penological interests."  *Turner v. Safely*, 482 U.S. 78, 89 (1987).

In his Response, Plaintiff stated his mail was tampered or held "two or three times." ECF No. 39, p. 15.  In his deposition he stated mail would get get held, and gave an example that mail would be dated the 10th, and he would not get it until the 16th or 20th of the month.  He also testified that he did not get all mail that was on the mail call log. ECF No. 40-1, p. 38.  He did not identify what

mail was held or lost.  He testified that there was another inmate named James Kirk Campbell in the same barracks with him.  He testified that this caused confusion, with the jail mistakenly mixing up both money from families and mail.  ECF 40-1, p. 8. He testified that he and the other James Campbell would try to let each other know if they had gotten each other's mail mistakenly.  Plaintiff was eventually moved to a different barracks. ECF No. 40-1, p. 38.  He does not indicate if the problems with the mail stopped concurrently with the move.

Plaintiff has not suggested there was any ongoing practice of censorship or that the application of any policy resulted in the alleged interference.  Rather, he has only alleged confusion due to the presence of an almost identically named inmate in his barracks with a total of "two or three times" where there was a problem with the mail.  This cannot support a  First Amendment violation claim.  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference-- an isolated incident of mail tampering is usually insufficient to establish a constitutional violation); *Zimmerman v. Tribble*, 226 F. 3d 568, 572 (7th Cir. 2000)(allegations of sporadic and short-term delays and disruptions are insufficient to state a claim under the First Amendment); *Rowe v. Shake*, 196 F.3d 778, 782-783 (7th Cir. 1999)(relatively short-term and sporadic delays in receiving mail not the result of content-based prison regulation or practice is insufficient to state a First Amendment claim).

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's interference with mail claim against all Defendants in their individual capacity.

### 5.    Access to News

Plaintiff argues that he did not have access to the news.  ECF No. 39, p. 11.

13

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).   "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1972). Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

It has been held that "[t]here is no basis for total restrictions on prisoners' access to the news in view of their clear First Amendment rights." *United States ex rel. Manicone v. Corso*, 365 F. Supp. 576, 577 (E.D. N.Y. 1973).  Furthermore, a number of courts have held that prisoners have a right to receive and read newspapers. *See e.g, Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (absent restrictions based on legitimate goals of confinement, prison inmates retain First Amendment right to receive and read newspapers); *Mann v. Smith*, 796 F.2d 79, 82-83 (5th Cir. 1986)(county jail's policy of banning newspapers and magazines violated a pretrial detainee's First Amendment rights where the state failed to show the ban served a legitimate government objective); *Wilkinson v. Skinner*, 462 F.2d 670, 673 n. 5 (2nd Cir. 1972)("refusal to deliver a newspaper would ordinarily be interference with appellant's first amendment rights"); *Rowland v. Jones*, 452 F.2d 1005 (8th Cir. 1971)(prison authorities' denial of access to newspaper "Muhammad Speaks" constituted prior restraint in violation of First Amendment); *Spellman v. Hopper*, 95 F. Supp. 2d 1267 (M.D. Ala. 1999)(absolute prohibition on subscription magazines and newspapers applied to administrative segregation inmates in Alabama is not reasonably related to legitimate penological goals).

In this case, Plaintiff's Response indicated he was denied access to news.  He also stated he did not subscribe to any newspapers was at OCDC and he had access to television but the detainees

chose the channels most days.  ECF No. 39, p. 11.  He also confirmed that none of the Defendants had  personally denied his request to watch news or refused to let him subscribe to a newspaper. ECF No. 39, p. 12.  When asked about the lack of news access at his deposition, Plaintiff at first seemed confused, not remembering this allegation until TV was mentioned by Defendants' attorney. ECF No. 40-1, p. 43.  Plaintiff testified that the inmates would vote on what to watch, but that the inmates were not permitted to touch the TV to change channels.  Therefore whatever was chosen would stay there until lights out.  ECF No.  40-1, p. 43.   After he filed his Complaint, the guards began coming in periodically and changing the channel to news, telling the inmates it was "mandatory."  ECF 40-1, p. 44.  Plaintiff further testified that he did not think they were allowed to have newspapers, but did not actually know that they could not have them.  ECF No.  40-1, p. 45.

Plaintiff has provided no evidence that the Defendants denied him access to news.  At most, his testimony shows that they allowed the inmates to choose channels and did not come back to change them frequently.  This policy changed while Plaintiff was at OCDC, with guards coming in more frequently and changing the channel to news periodically.  Regarding newspapers, Plaintiff did not subscribe, did not ask to subscribe, and did not ask if he could subscribe.  These facts do not support a First Amendment violation.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's access to news claim against all Defendants in their individual capacity.

### 6.    No Religious Service

Plaintiff alleges that the OCDC did not provide religious services.  ECF No. 39, p. 9.

Like with the freedom to receive ideas, "the free exercise right is limited insofar as a

prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are' reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002)*(quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987); *Cruz v.  Beto*, 405 U.S. 319, 322 (1972)); *see also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994).  "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004) (although inmate could not participate in group worship or group religious study, he could still pray, study, observe holy days, communicate with other inmates of the same religion though approved procedures, and occasionally meet with clergy).

In this case, Plaintiff alleges that the OCDC did not provide religious services.  ECF No. 39, p. 9.  When asked if any of the named Defendants informed him that "you would not be allowed to practice your religion or that they would not provide you with religious services," Plaintiff checked "No" and stated that "they never informed me of anything." ECF No. 39, p. 9-10.  Plaintiff also confirmed on his questionnaire that he had contacted his personal minister about conducting a service, but left the detention center before the service could be scheduled.  ECF No. 39, p. 10.  At his deposition, Plaintiff testified that he had not grieved the lack of service, instead only talking to jailers.  He did not know if any volunteers were handling or providing religious services.  ECF No. 40-1, p. 41. His wife was in contact with his personal minister, who had agreed to come to OCDC, but Plaintiff left before it could be arranged.  ECF No. 40-1, p. 42.

These facts do not support a First Amendment violation claim.  Plaintiff was not prevented from studying, praying, observing holy days, or otherwise practicing his religion.  He did not grieve

16

the lack of services or even inquire as to what options might be available.  He has not provided evidence that his personal minister would  have been  prevented from coming to OCDC to provide ministry.  To the contrary, he stated that the minister and OCDC were working on doing so, and it did not happen simply because Plaintiff was moved to another facility before it could be arranged. Nor has Plaintiff provided evidence that he was prevented from speaking to his minister personally.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's lack of religious services claim against all Defendants in their individual capacity.

### 7.    Cold Food, Inadequate Amounts of Food, and Unsanitary Food Presentation

Plaintiff alleges that the food provided at the OCDC was "cold, small, and served at different times." ECF No. 39, p. 23.  He does not allege that he was ever denied food or water, but does allege that he lost weight.  ECF No. 39, p. 24.  He did not file a grievance about the food temperature or quantity.  ECF No. 39, p. 25.  Plaintiff also testified that the food was served from a dirty cart, the trays did not have lids, and the individuals serving the food did not wear hairnets or gloves.  He did not become ill from eating the food or from lack of food. ECF No. 40-1, p. 28

"Constitutional standards require only that prison authorities provide an inmate with well-balanced meals, containing sufficient nutritional value to preserve health." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)(internal quotation marks and citation omitted).  The provision of only cold food does not violate the Constitution.  *See Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992)("We agree with the district court that Brown-El's claim that his constitutional rights were violated when he was served cold food is frivolous."); *Hamm v. DeKalb County*, 774 F.2d 1567,

1575 (11th Cir. 1985)(Food that "occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *Waring v. Meachum*, 175 F. Supp. 2d 230, 239 (D. Conn. 2001)("The provision of cold food is not, by itself, a violation of the Eighth Amendment as long as it is nutritionally adequate and is 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'"); *Smith v. Copeland*, 892 F. Supp. 1218, 1229 (E.D. Mo. 1995)(holding that diet of only cold food, in and of itself, does not offend the Constitution), *aff'd,* 87 F.3d 265 (8th Cir. 1996).

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998)(expressing doubt that Talib who missed about fifty meals in five months and lost fifteen pounds met this threshold)(*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)(even on a regular permanent basis, two meals a day may be adequate). *See also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)(claim that inmate missed eight meals properly dismissed as frivolous); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982)(Eighth Amendment not violated when inmate served only one meal a day for fifteen consecutive days where the one meal was sufficient to maintain normal health).

Unsanitary food preparation or presentation can constitute an Eighth Amendment violation if it presents "an immediate danger to the health and well-being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980) For example, in *Ramos*, the state agency

18

found that the kitchens of the detention center were substantially out of compliance with health and safety regulations, including standing pools of water due to broken drains, rotting food on the floors, ubiquitous rodent and bird droppings in the kitchen and on the food, mold on the walls of the walk-in coolers, and inadequate training in food safety. An environmental health, safety, and sanitation expert found the food service at the facility represented "an imminent danger to the health and well-being of inmates consuming food in that operation." *Id.  See also Divers v.  Dep't of Corrections*, 921 F.2d 191, 193 (8th Cir. 1990)(per curiam)(allegations which included statement that insufficient amounts of cold unappetizing food prepared from a restricted menu was delivered through unsanitary food slots in their cell doors was sufficient to survive dismissal as legally frivolous); *Day v.  Norris*, 219 Fed.  App'x 608, 610 (8th Cir.  2007)(allegations which  included statements that food  was of insufficient quantity, "often rotten," and food service workers did not wash hands and purposefully placed their bodily fluids into the food stated a sufficient claim to survive dismissal prior to service).

However, to survive summary judgment on an allegation of unsanitary food, an inmate must present sufficient evidence that the food presented "an immediate danger to his health, or that his health suffered as a result of the food." *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *see also Stafford v. DeRose*,  2013 WL 877133, at *7, n.  11 (M.D. Pa. Mar. 8, 2013)("While it may be more sanitary for food servers to wear hairnets and gloves, this Court would note that waiters and waitresses in restaurants across the country serve meals every day to customers without wearing hairnets or gloves.").

Plaintiff has presented no evidence about his food that is sufficient to survive this summary judgment motion.  It is well established in the Eighth Circuit that cold food is a frivolous complaint. Plaintiff stated he never got sick from the food, but he lost weight.  He has not provided any evidence

19

about how much weight he lost, or his height and weight prior to coming to OCDC.  He has not provided any details about the food quantities that might support an inference of inadequate portions. He did not file a grievance about the food.  Finally, Plaintiff has not provided any evidence that would support a claim for unsanitary food.  I can find no precedent which holds that food served by individuals without hairnets and gloves constitutes an Eighth Amendment violation. Given the Arkansas State Board of Health does not require free world food establishment wait staff to don hairnets and gloves,[1] this allegation cannot support a claim of Eighth Amendment violation.

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32.) be **GRANTED** as to Plaintiff's food claims against all Defendants in their individual capacity.

### 8.    Living Conditions

Plaintiff makes a number of allegations about the living conditions in OCDC: 1) the center was infested with spiders and he was bitten (ECF No. 39, p. 15);  2) the center did not have tuberculosis lights and did not delouse inmates upon arrival (ECF No. 39, p. 16); 3) there was black mold in the showers (ECF No. 39, p. 18); 4) cleaning supplies were provided once a week and there were no linens, towels, or soap dispensers (ECF No. 39, p. 21); 5) he had no privacy during visitation with his family (ECF No. 39, p. 21) and  6) there were no disciplinary processes or rules posted.  ECF No. 39, p. 22.

As a preliminary matter for all of these claims, Plaintiff has not stated how any of the Defendants were responsible for these conditions.  Rather, he stated that Defendant Norwood "never made sure that his officers were doing the job they were required to do.  Norwood never came to

---

[1]Arkansas State Board of Health Rules and Regulations Pertaining to Food Establishments § 2-402.11(B), available  at http://www.healthy.arkansas.gov/aboutADH/ RulesRegs/FoodServiceEstablishmentsNew.pdf.

check on inmates." ECF No. 39, p. 25. "In Mr. Greeley's capacity as Jail Administrator he never answered grievances or responded to inmates' requests to see him about certain situations. He didn't make sure officers were doing their jobs." ECF No. 39, p. 26. "Mr. Wood never let his boss know what was going on in the jail. Mr. Wood would say to write a grievance but laugh about it saying they wouldn't get answered. Mr. Wood never gave us the supplies we needed to clean. Mr. Wood would put us on the back the list waiting to come to CDC." ECF No. 39, p. 26. Plaintiff testified that he had no contact whatsoever with Defendants Greeley and Norwood. ECF No. 40-1, p. 47. He testified that he sued Defendant Wood "because he was a jailer. . . I mean, basically, it's not just basically Doug Wood. It's basically just the staff itself, and the staff itself wasn't running the jail right." ECF No. 40-1, pp. 47-48. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing Rizzo v. Goode, 423 U.S. 362, 370 (1976); *Cotton v. Hutto*, 577 F.2d 453, 455 (8th Cir.1978) (per curiam) (respondeat superior theory does not apply in § 1983 suits)). Thus, Plaintiff has not alleged a causal link between any of the Defendants and his claims.

Plaintiff's allegation regarding the failure to post disciplinary processes and rules alone does not state a cognizable constitutional claim.

Plaintiff admitted he did not file a grievance for the spiders or the lack of tuberculosis lights and delousing procedure. Plaintiff alleges that he filed a grievance concerning the mold, but never got an answer to the grievance. However, he provided no evidence of that grievance and has not indicated who that grievance was filed against. Nor has he stated that OCDC refused to provide him with a copy of the grievance. Therefore he has not exhausted his administrative remedies for these claims. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) ("[T]o properly exhaust administrative

remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules" and *"it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").* Further, he admitted he did not become ill or suffer any physical injury from any of these conditions. Nor has he alleged any emotional consequences. These allegation cannot support a claim of Constitutional violation.

Plaintiff alleged boils and dirty bed linen from the lack of linen, towels, and soap dispensers. "[R]epeated deprivation of hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996)(citation omitted). However, "extreme deprivations are required to make out a conditions-of-confinement claims. [O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 112 S. Ct. at 1000; *Myers v. Hundley* 101 F.3d 542, 544 (8th Cir. 1996); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989); *see also Dundee v. Rambo*, 2011 WL 776161 (W.D. Ark. )(rash caused by dirty clothing, combined with a lack of towel, underwear, and socks, were not Constitutional violation.) Plaintiff does not contend that he was not able to maintain a sufficient level of hygiene. The only injury cited is boils. This can be a serious health issue; however, he has provided no evidence that he sought medical treatment, making them a *de minimis* injury at most. Nor did Plaintiff file a grievance about the lack of linen, towels, or soap dispensers. These allegation cannot support a claim of Constitutional violation.

Plaintiff alleges he had no privacy with his family during visitation. ECF No. 39, p. 21. When asked how this violated his constitutional rights, he stated: "Inmates were masturbating to my family and kids saw it. I couldn't talk about my case because of people around. " ECF No. 39, p. 22. He testified that visitation occurred though a TV screen while he was in his pod. He could not

leave his pod for visitation.  ECF No.  40-1, p. 45.  However, neither a  visitor nor an inmate has any expectation to privacy in their conversation.  *United States v. Peoples*, 250 F.3d 630, 637 (8th Cir. 2001).  These allegations cannot support a claim of Constitutional violation.

Accordingly, I recommend Defendants' Motion for Summary Judgment (ECF No.  32) be **GRANTED** as to Plaintiff's living condition claims against all Defendants in their individual capacity.

## IV.  CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No.  32) be **GRANTED** and Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**IT IS SO ORDERED this 27th day of February 2015.**

/s/ Barry A. Bryant

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE